21-2096 Southern Iowa, United States v. Darvill Bragg Good morning, may it please the court. Let me get you pinned here so you won't go away on me in the middle. Alright, Ms. Quick. Hello again. Good morning, may it please the court. Mr. Bragg raises several challenges to his conviction and sentence for being a felon in possession of a firearm. Today I will focus on the suppression argument as well as challenges to the application of the Armed Career Criminal Act, but I'm happy to answer any questions about arguments in the brief. First, the delay between the seizure of Mr. Bragg's cell phone and the application for a search warrant was unreasonable and violated his Fourth Amendment rights. The good faith exception does not apply, and application of the exclusionary rule is warranted. Now, this circuit and others have laid out several factors to consider when arguing undue delay, and this framework establishes that Mr. Bragg's Fourth Amendment rights were violated. The first two factors aren't super heavily disputed, I think, as weighing in favor of Mr. Bragg. The length of delay here between the seizure and the search warrant application was 24 days. Under Mays, this court found 15 days supported that it was unreasonable. Robbins, 12 days. Mitchell and other circuits said 21 days was unreasonable. So that's consistent with those cases. Also, the nature of the property seized. Courts are generally more critical when dealing with a smart device like an iPhone, recognizing, consistent with Riley v. California, how integral those are to individuals' day-to-day, and they contain much personal and private information. I think where the biggest disputes are on the later factors, the first being whether Mr. Bragg had a sufficient possessory interest in his iPhone. I'd first note that he did not consent to the seizure, and he did not voluntarily relinquish control of the iPhone. The government points to two indicators that this should weigh in their favor, the first being that he did not ask for it back. I'd point to this court's recent decision in Robbins, where there was just not a question of, did the individual ask for the property back? It was, was there any meaningful opportunity for that individual to do so? There was no evidence prevented by the government that he was notified about how to get returned property. Also, Detective Butt testified that he would not know if a family member or a friend had requested this property on behalf of Mr. Bragg. So they have not established that. The second point the government makes is that pretrial detainees have a limited possessory right. Counselor, let me just interject. I think that's a good point about the opportunity to object or request. The trouble is, I think that the absence of a request, which obviously can be made from jail or anywhere, the absence of a request kind of reduces the apparent significance of a smartphone to this person at this point in time, plus the fact that data is unlikely to dissipate or disappear. It seems to me that, don't those have to weigh in the length of delay analysis? I think the fact that there's no evidence that Mr. Bragg himself does weigh in the government's favor slightly, but not significantly, especially considering they could not present evidence that no one else requested it on his behalf, which quite frankly, when someone is in county jail being detained, that's likely how it would happen. Someone else on their behalf is going to ask for it back. But as I would point the court as far as considering that this type of device, I think the district court judge in Wisconsin really details how, even when someone is incarcerated, something like an iPhone or a computer still has use to that individual. It's not like a car, in that case it was a van, where you can't use it, it has no benefit to you. When you have a cell phone that's containing your private information, storing your data, and other applications are using that data, it still does interfere with an individual's possessory interest. And finally, the justifiable reason for the delay. Here, Detective Butt basically said, I was busy. And that is why there was a 24-day delay between the seizure and applying for the search warrant. The Smith court was very critical of that. Just general busyness is not going to be enough to justify delay. And the Third Circuit in Mitchell, or the Eleventh Circuit in Mitchell, noted, was critical of the detective for not asking for help, and not seeing if there's another officer who could apply for the affidavit. Here, Detective Butt, when asked if there was an officer who could help, simply said, I would never do that. No reason why he would not ask for help. What I think is also telling is the fact that, and this could go to the exclusionary rule as well, Detective Butt applied for a search warrant of Mr. Bragg's home less than a week after he was arrested. There was no additional investigation. There was nothing else that was put in the warrant affidavit for the I-FOB, besides the change in the stock language. So the fact that he could apply for a search warrant of Mr. Bragg's home, but still held onto the cell phone without applying for a search warrant, is indicative that it's not a justifiable reason for the delay. And the final note on that is that Detective Butt acknowledged that the affidavit was not especially complex. I think excluding the kind of stock language that's used, it's only two pages as far as their investigation. And exclusion of the evidence is the... What about the good faith exception? So I think the traditional good faith exception does not apply as far as, well, there's probable cause in the search warrant. Courts have noted that that would completely remove any deterrent effects as far as unlawful extended seizures, if an officer could just go at the end and get a warrant and sanitize it. I think I potentially do it in court sometimes, treat good faith and whether the exclusionary rule should apply as interchangeable. Like in the Smith case, when analyzing it, kind of talks about good faith when talking about the Herring case, when requiring that for evidence to be excluded, there must be deliberate conduct, there must be gross negligence. And I don't think that the government can establish that exclusion is not warranted. Looking at those factors... May I just clarify, are you saying you think the good faith exception does not apply when the question is undue delay? Yes. Wouldn't we still have to look at whether a reasonable officer could rely on the issuing judge's conclusion that the delay was reasonable? No, I don't think so, Your Honor, because when a judge signs off on a search warrant, they aren't signing off on the legality of the officer's pre-warrant conduct. The magistrate judge, district court judge, is signing off on whether there's probable cause to search. And they couldn't. I see. So you think the issuing judge does not consider the delay? Correct. And I don't think that the judge could. I mean, we had to have a whole evidentiary hearing at the district court to consider whether the undue delay was warranted. So even if the judge wanted to, the judge couldn't consider those factors. And that's our initial position. But alternatively, if the court thinks some type of good faith or if there's the hearing analysis done in the Smith case, that exclusion is still warranted because there is deliberate or grossly negligent conduct. And I think when looking at that language, it's important to keep in the context of what the Haring case actually was. There, the misconduct was based off of a clerical error that someone had an active warrant for their arrest, and it was a mistake of fact. Here, this was deliberate conduct for many of the reasons I've already discussed, and that Detective Butt could apply for a search warrant for his home and still just sat on the cell phone for two weeks after. And there was no basis for him to do so, and I don't want to repeat myself. And even the Smith court, which did find that the exclusionary rule was inappropriate, seemed almost reluctant to do so and kind of ended their opinion with, officers, you're now on notice that this kind of seizure and holding it indefinitely is not appropriate and that you must be diligent in obtaining a search warrant. And I think, again, to your note, Your Honor, in terms of whether the court's, this good faith and whether probable cause, and does the district court judge or the issuing judge consider length of delay, I think the most I've seen, and I think it was, I apologize if I'm not accurate, the Seventh Circuit case in Burggard, they gave a deference to, kind of almost like a deference to the length of delay, whether it was reasonable or not, if the district court judge had signed off on it. It wasn't definitive. Our initial position is that this court shouldn't follow that because we believe district court judges aren't making those kind of legal determinations. But even if there is that kind of deference, under the circuit's case law, it's established that it was unreasonable. I want to now turn to- Let me, let me- Yeah, go ahead. Go ahead, Judge Hepburn. Well, just a quick question. I want you to go back to what you said earlier and could you maybe clarify for me what interest of the defendant here is prejudiced by delay where he is in custody and no one asked for this device? No one in his behalf asked for this device? What difference does it make if it's sitting there in police custody and the search takes place the next day, the next week, the next month, if the defendant is in custody and nobody in his behalf requests possession of the phone or the device? Well, I think my initial position is that we don't need to show any kind of prejudice, but I do think that goes back to, again, what I mentioned with the Wisconsin District Court and that, I mean, speaking from experience, oftentimes clients, that phone will contain contact information. They want to call people. They need to reach people. It contains the personal and private information that they are not having access to and I have that come up quite a bit where they need something in that phone and they can't reach it. Now, nothing like that specifically is on the record in this case, but I do think that's something that the court needs to consider and that's consistent with the reasoning from the District Court judge in Wisconsin. It's still, again, something that's integral to our day-to-day and individuals who are incarcerated still could need access to that information. So you think we don't need to look at what actually happened here in these circumstances, but it's more kind of an objective kind of inquiry? Is that your point? I think it's an objective inquiry and I don't think that we really need to, there doesn't need to be prejudice in that if we look at Mays and we look at Robbins and Mitchell, the courts have said, just due to the nature of the device and the length of delay, that's enough. You know, not needing to show that Mr. Bragg was trying to reach a family member and he didn't have the phone number. I think under the circuit's precedent and others that that's enough. So before you run out of time, unless Judge Loken, were you going to ask something further on that? I was just going to ask, can we ignore the second delay because the government, you referenced it in your briefs, but the government then didn't offer evidence as I understand it and the argument this morning has been the first delay. Can we pretty much stop with that? I don't think it goes to the length of delay because it's all about obtaining a warrant and a warrant was obtained after the 24 days. Let's go to Judge Cowlton's question. Well, on the question of the sentence and the Illinois convictions, can you help me with a hypothetical, even if there isn't a real case that's been reported on how armed robbery would be committed recklessly? I'm trying to work through that in my mind. What would that look like if you have a realistic hypothetical? I don't know that I have a hypothetical. Well, do you have a real case? I'm pretty sure you don't have a reported case and I take your point that you're arguing just based on the terms of the statute, but I'm still wondering for my own edification if there's even a realistic hypothetical. Well, our primary argument is that the Illinois court has repeatedly said that recklessness is sufficient for Illinois armed robbery. I understand that argument. Yeah, but as far as... You can't think of how it could ever happen, though. That concerns me. Well, I think it was... Hypothetical? No, I don't have one offhand. Not offhand, no. But I think what trumps here is the Illinois appellate courts interpreting their own laws and being clear, and this doesn't get into... You know, we talk about Dornis Alvarez and we talk about theoretical and fanciful arguments, and I understand when a defense attorney comes in and says, well, force could be a mild touching, could be something like that, so it's not enough. That's distinguishable from what we have here. What we have here is the Illinois appellate courts clearly stating that recklessness is sufficient, and the government wants this court to basically just disregard what the Illinois appellate courts have said, and this court should decline to do so. There are no further questions. I'm out of time. Mr. Ripley. Good morning. Thank you, Your Honor. May it please the court, Will Ripley, on behalf of the government. I think I'll take these two issues that we've been talking about, essentially in the same order that Ms. Quick did, starting with the search. Obviously, the overarching theme here, as it always is, in this issue is reasonableness. Ms. Quick indicated at the outset of her argument that she thinks the first two factors that have been determined to be part of the analysis here are relatively undisputed and weigh heavily in her favor. I don't agree with that, simply because when we think about the analysis here as being one of, okay, with our facts, was this unreasonable? Well, the with our facts part is very important, and this case differs from those that she cited when she indicated that this factor weighs heavily because we have a 24-day delay here. That's what we're talking about. Those differences, some of which have been highlighted by members of the court, including that there was no request to return it. And, of course, there wasn't, because Mr. Bragg wouldn't have been able to possess this. Again, he was in custody the entire length of those 24 days. And Ms. Quick indicated there's no evidence that no one else, you know, the government didn't put forth evidence that no one else asked for it on his behalf. I'll just point out that, obviously, Mr. Bragg was there at the hearing and was able to present evidence, and there was no request. He did not present evidence that some family member or friend of his asked for it back. This case is not one of just general busyness. The record is more detailed than that. And the entire, it wasn't just Detective Butt who was busy. He didn't just cite general busyness. He laid out exactly what he was investigating, both with respect to Mr. Bragg from the night in question, the night that underlies this conviction, but also from incidents that Mr. Bragg was involved in in the weeks leading up to it. He did, Detective Butt did get a search warrant for Mr. Bragg's residence sooner than he got the search warrant for his phone. That's obviously undisputed. But I think the court can understand why, and that is that evidence in a house is movable. It's destructible. It's hideable. The phone was in Davenport Police custody. Counsel, let me stop you on this complex investigation point because I've been sitting here wondering if Ms. Quick is right on her unreasonable delay. Now, we have a cell phone that's seized as potential evidence and held during investigation and then preparation for trial. And now we get to nine months later, and an investigator says, based on what we found, we think there may be something in that cell phone. Now, if Ms. Quick's delay argument is correct, what happens? Is there any way for the government to acquire what evidence may be in there? After a nine-month delay. However long it takes. Sure. 24 days, 844 days, or just there isn't a lot of investigation, but the prosecutor comes up and says, well, what did you seize at the time of the arrest? And, okay, we've got this, that, and the other. And he says, well, the cell phone, I think that's probably, given what we are, the theory we're going to prosecute, we should know what's in there. Now, if Ms. Quick is right, does that mean that evidence is forever gone? Not necessarily. I can't think of another way to get it. Well, at that point, I think you would apply for a search warrant, and if you got the search warrant, then we'd be here once again analyzing whether or not that delay, whatever the delay is, was reasonable. That's ultimately the question. And I think in a situation. If she's right that it's unreasonable, you mean you're saying you should have put in more evidence at the hearing about why the need to search came up, or the desire to search, the interest in searching came up, took so long to develop? No, there was an interest. It seems to me your position just paralyzes, if you will, potential evidence seized, item seized as potential evidence and then held until we get close to trial. That would be, that situation, item seized at the time of an incident, held until you're much closer to trial, and then examined essentially for the first time then, that would be, I think, a difficult case, but importantly for our purposes today, that's a different case. We have a delay of 24 days. The intent to examine the device arose at the point of the seizure. It was just the application for the search warrant waited three weeks due to investigative, I guess, challenges, you know, a workload essentially. And officers searched the house first, again, because they were balancing their workload and their efficient resources against the risk of loss that's inherent in evidence that might still be in a residence, versus a cell phone, which is at that point static, and you've got, it was seized from a person who has no possessory interest in it really anymore. I shouldn't say no, has a very diminished possessory interest at that point because they are in custody. This wasn't, and someone from whom it was seized, incident to arrest, which goes towards that there was probable cause for the arrest at the time, obviously, because Mr. Bragg was in fact arrested at the time. And so I understand your question, Judge Logan, but I think, and I do acknowledge that would be a difficult situation, but I think it's a different one, Your Honor, than we have here. Well, if the defendant had prevailed in the motion, wouldn't the remedy have been both suppression and to give the phone back? So the government wouldn't even have the phone anymore? Had he... If the court were to say that the delay were unreasonable? The remedy, if the court had said the delay was unreasonable and the Leon Faith did not render exclusion inapplicable, then yes, I suppose at that point it's a piece of plastic and metal and wire that doesn't have any evidentiary value,  so we certainly wouldn't have given the phone to him. I see. But, and to that, the Leon Good Faith, I want to touch on that before I move on to the armed criminal act. You just said that you wouldn't have given the phone to him? How could you refuse to? Well, to him personally, Your Honor, he was still in custody, that's all I meant. He would not... You mean like the wallet that he had when he was booked and was seized? Correct. I don't understand the point. You're saying that his relative could pick it up, but you wouldn't send it over to the jail, is that what you're saying? That is correct, Your Honor. You're arguing independent evidentiary value, because some of these cases the government says, well, even if there was undue delay, the item has independent value as evidence in the trial, and we can keep it for that reason, and maybe for that reason the delay is irrelevant. But I didn't see you arguing that here. We don't have facts that would make that argument appropriate in this instance, Your Honor. Not with this particular phone. If it did, that would be a different case where you could maybe keep it indefinitely. Yes, I think there would be a set of facts, and those facts I can envision, and I can think of cases where that would be applicable and appropriate to consider. This just isn't that, Your Honor. The government obviously disagrees that this analysis, was the seizure, you know, just can we apply the lien of good faith to this set of facts? The government believes absolutely we can. Not only should you engage in the analysis, but in this case the analysis clearly indicates that suppression is not appropriate. When you look at what that doctrine is, it's kind of thinking to yourself, okay, a reasonable officer who goes through this process, what are they going to come away from the process with? Are they going to believe that they've done something wrong, given that a judge signed the warrant? Ms. Quick, in her argument, is assuming that a judge is not considering delay. Even if that's accurate, if we assume that's accurate, and I don't agree with that necessarily, but let's assume that's accurate, the question I think is would the officer know that the judge is not considering that delay? The officer goes to see a judge, provides the judge with a set of facts. The facts include the date on which the thing was seized, and obviously everyone knows the date that the officer is there with the judge. And they leave that encounter with the judge with a search warrant indicating that the judge has signed off there's probable cause to believe and has essentially okayed the search. Given that this is not an extraordinary case, Ms. Quick in her rebuttal brief cites to the Nguyen case, which is a district court case from our same district. The delay there was anywhere from four months to about two years. And so four months is as short as the delay could be, and the judge in that case did not cite, did not allow a lien analysis simply because the delay was so unreasonable on its face. And this isn't that case. Even the Seventh Circuit, which the judge cited to, indicated that they're not categorically ruling out the possibility of a lien argument in this type of case. And so I think it's given, again, that we're looking at overall unreasonableness, I think it is inappropriate to just foreclose a lien analysis in this line of cases. If the delay is so exceedingly unreasonable that no reasonable officer could consider it reasonable, then that's essentially a lien analysis, and then maybe you do exclude it. But this is not that case. Not when Mr. Bragg was in custody, did not request it back. Our delay is only three weeks. And we have a record of explanation as to what was underlying the delay. I want to touch on the Armed Career Criminal Act before I run out of time here. Judge Colleton asked for a realistic hypothetical. It's very difficult. I would submit that it's virtually impossible to come up with one, because at its base, robbery is what? Robbery is an assault and a theft. And it's certainly possible to come up with a hypothetical where an assault could be done recklessly. But I challenge anyone to come up with a hypothetical where theft is done recklessly. And that's essentially what the Jones case is saying, is that a theft is a knowing, intentional attempt to take something from someone. Well, what about if the theft has to be done knowingly, but the force could be used recklessly? Is that realistic? It is, yes, it's possible. I don't know about realistic, but it's possible. But if you... That's what I'm trying to come up with. Is there a realistic hypothetical scenario in which that could even happen? I don't believe so, I guess. I'm going to tweak my answer a little bit. No, I don't believe it is, because you're engaging in that assault of conduct for one purpose only, and that's to take someone's property. And so the intent... These cases that all say... In Illinois, there's a bunch. We've cited them, and Ms. Quick cited them. There are a lot of cases in Illinois that do say that the mens rea for robbery could be intentional, could be knowing, it could be reckless. But when you read the cases, that language comes up when that court that is writing that opinion is saying, because the robbery statute in Illinois is silent on mens rea, then we have this default principle, and it runs throughout all of law. It's not limited to robbery. It's true with sex abuse, which is the McMullen case, and some other cases that have statutes that are silent on mens rea. And this court has seen this before. Many statutes for many cases are silent on mens rea, and when they are, the general principle is we default to that it can be either knowing, intentional, or reckless. None of the cases deal with a robbery that was committed recklessly. They're all analyzing it in whether the jury was instructed properly, and they're just kind of stating as a matter of law, when we don't have a mens rea, we're left with this. We're left with our default. The government is not suggesting we disregard that language, as Mr. Quick said, or excuse me, Ms. Quick. The government is just simply saying, read it in context. And the context is, again, when the statute is silent, then we're left with these three options. But it is absolutely impossible, the government submits, for someone to commit a robbery, actually commit a robbery in Illinois, without at least knowing conduct. And I do see that I'm out of time, unless there's other questions. Thank you very much. Judge Loken, I can see that you're speaking. I, for some reason, am unable to hear you. I apologize. No, I was muted. I try not to mute particularly when I'm presiding, but the urge must have been overwhelming. Okay, I didn't hear what you said. Pardon? I'm sorry, I didn't hear what you said. Were you directing that to me, or were you going back to Ms. Quick? Just now? Can you hear me now? I can, yes. All right, I was giving Ms. Quick a minute for rebuttal. Now that I'm over my mind blank, thinking of a hypothetical, I think it does come down to reckless use of force, and thinking about, you know, I agree with Mr. Ripley, robbery is essentially taking plus an assault. And think of an individual who's ripping a purse off of someone and wildly flailing, and they're moving their elbows, and then they hit someone in the head. That's, to me, one example where it could be reckless use of force, that an individual could not be knowingly trying to hurt someone, but their conduct would be considered reckless to fall within Illinois armed robbery. Of course, our primary position is that the Illinois Supreme Courts have said it, they've said recklessness is enough, and that establishes that it is over broad. Well, in your hypothetical, the purse snatcher would have to have a gun in his pocket, I guess, to make it complete. For the armed robbery, yes. Because I think it only requires that someone be armed or carrying, it doesn't require display under Mr. Bragg's version of the statute. And that happens a lot. Ms. Quick, just a clarification. Did the motion to suppress include a request that the device be released? No, it did not. Thank you. Thank you, counsel. Case has been well briefed and argued, and interesting issues. We'll take the case under advisement.